JOHN PATRICK BARATTA, APPELLANT, V. JOELINE MARIE BARATTA, APPELLEE.

511 N.W.2d 104

Filed February 4, 1994.   No. S-92-294.

Michael F. Pistillo, of Steier, Rogers & Pistillo, P.C., for appellant.

Thomas R. Hickey for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

HASTINGS, C.J.

Petitioner, John Patrick Baratta, appeals from the decree of dissolution of his marriage to respondent, Joeline Marie Baratta, assigning generally as error the awards against him for child support, alimony, and child-care expenses and the mandatory nature of the order relating to child visitations.

The parties were married on July 4, 1987, and have two children as a result of that marriage, Kylie Debra, born July 19, 1988, and Jaimee Katherine Louise, born October 6, 1990. Petitioner has four other children, born of a prior marriage and ranging in age from 17 to 11, for whom he is currently under court order to pay child support of $500 per month, of which $125 is to apply on an arrearage of "$30,000, something like that."

The trial court's decree granted the dissolution and awarded custody of the two children to respondent. The court ordered petitioner to pay the sum of $400 per month for the support of the two children, to be reduced to $235 if only one child is a subject of that award; 68 percent of the children's unreimbursed medical expense; $200 per month in alimony for 36 months; and $800 in attorney fees for respondent, payable $100 per month for 8 months. In addition, the court set forth a detailed and liberal visitation schedule for petitioner which was "not

optional with the Petitioner."

It is difficult to determine just what the trial court found with reference to petitioner's income, but by combining the findings made and the evidence submitted by way of affidavit in the preliminary-order stage of these proceedings, along with the record from the hearing on final dissolution, the district court's award, as far as child support is concerned, can be divined. At this point, we take the opportunity to suggest that when using the Nebraska Child Support Guidelines, it would be extremely helpful to the reviewing court if the trial judge somehow would incorporate into the record his or her worksheet which was employed in arriving at a child support amount.

Petitioner is a 42-year-old man who has fathered six children and is in excess of $30,000 behind on payments previously ordered in his first dissolution. He now would have this court believe that his income will justify no award for alimony and no more than $235 per month for two children.

At the time of the hearing on temporary allowances, petitioner's affidavit dated September 3, 1991, recited that he had a total monthly income of $1,516.66 less $231.83 for income taxes, $117 for Federal Insurance Contributions Act (FICA) deductions, and $500 for child support from a previous marriage, leaving him a $667.83 net income. That amount, when combined with what he claimed the respondent earned, $570 per month, made a combined income for child support guidelines purposes of $1,237.83, of which his income contributed 54 percent.

During the trial on the merits, petitioner testified that he was the manager of the Stockade Restaurant, located at 13325 Millard Avenue in Omaha. He stated that he was paid wages of $350 per week, plus Blue Cross/Blue Shield insurance. Petitioner claimed that as of January 1992, at least, his employers, who for all practical purposes are his father and mother, began to charge him $400-per-month rental for the apartment which he and respondent formerly had rent free.

On cross-examination, petitioner admitted that he continued to play golf as often as he could, sometimes as many as five times per week. After having stated that respondent took almost everything out of their apartment, he admitted that she

had left the washer and dryer, the microwave oven, the refrigerator, the stove, the bedroom set, the kitchen table and chairs, a couch and chair, and a television set, all of which he claimed belonged to his mother and father, and that they had only let them use those articles. Petitioner also claims that he used to have the free use of a motor vehicle owned by his parents, but that he now has to buy his own car. This arrangement was changed by his father some 2 or 3 months after the order on temporary allowances without any explanation by his father. Although at the time of the temporary-allowance hearing petitioner was receiving free food from his parents for himself and his family, he now claims to eat only 50 dollars' worth of food per month—"I don't eat every day." Petitioner contends that he was not paid in cash for any of his work in 1987 through 1990, but that "my father would give us, once in awhile, some money to go to the show or some money to do things, yes." In addition, it is apparent from the record that his father was paying the $500-per-month child support ordered by the court in another dissolution action. Although petitioner admitted that he received some money on the side from the Stockade, he denied that he was receiving $200 per month, as testified to by respondent. Although admitting that he was the manager of the Stockade, he denied having any knowledge as to how much money was received from the game machines.

Respondent testified that while the parties were married, they lived in the apartment above the Stockade rent free, paid no utilities, had full use of the company vehicle, and were paid at least $200 per month from the game machines. She formerly worked as a waitress at the Stockade, but now works for an insurance company, where her gross monthly wage is $852, and she has expenses of approximately $1,800 per month.

Again, it is difficult to determine from the record just what figures the trial judge utilized in arriving at an alimony award. He only stated:

> I have worked through the income figures and accepting the father's statement that he has monthly expenses of $1,135 he is going to have enough income to supplement the mother while she's getting into the workforce, and I

would incorporate an alimony award of $200 a month for a period of 36 months.

It is quite apparent from the record that the trial court simply did not lend much credence to the claim of petitioner that his father had suddenly changed petitioner's wages by substantially reducing them shortly after the court had entered its temporary allowances.

The record supports a finding that petitioner earned a gross monthly income of approximately $2,166. This is arrived at by taking the cash salary of $1,516 and adding to it the $400 for rent, $200 from game-machine income, and $50 for food. His deductions for FICA and income taxes amount to $339.19, together with $375 for obligations arising out of current payment for child support from a previous marriage. This leaves a net of $1,451.81, which when added to respondent's admitted net monthly salary of $687, amounts to $2,138.81 for the purpose of determination of child support. According to the child support guidelines, a combined monthly income of that amount would result in a monthly payment for the support of one child of $405 and for two children of $629. Petitioner's proportionate share of those amounts would be 68 percent and would result in a child support obligation for him of $275 and $427, compared to $235 and $400 ordered by the trial court.

The ultimate test in determining the appropriateness of awards of alimony and child support is reasonableness as determined by the facts of each case, and the trial court's determination normally will be affirmed in the absence of an abuse of discretion. *Helms v. Helms*, 234 Neb. 630, 452 N.W.2d 269 (1990). We are required to conduct a de novo review of dissolution cases, and when the evidence is in conflict, we consider, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *McWha v. McWha*, 241 Neb. 355, 488 N.W.2d 357 (1992). In this case, when we review the record as a whole, it does not appear that the district court abused its discretion in attributing additional income to petitioner in awarding child support.

If alimony is to be justified in this case, we must look to the amount of income remaining to petitioner from which alimony

could be paid. Petitioner's net monthly salary after payment of FICA deductions, income taxes, $400-per-month child support ordered in this case, and $375-per-month child support ordered in a previous dissolution amounts to $1,051.81. He claims monthly expenses of $1,135, which figure includes $500 paid on previously ordered child support. Of that latter amount, $375 has been applied to reduce petitioner's net income as set forth above. There then remains $760 of monthly expenses, which when applied to the net income of $1,051.81, leaves him $291.81 per month to apply to alimony and attorney fees ordered to be paid.

The ultimate test in determining correctness in the amount of alimony awarded is reasonableness as determined by the facts of each case. *Busekist v. Busekist*, 224 Neb. 510, 398 N.W.2d 722 (1987).

Awards of alimony are initially entrusted to the discretion of the trial judge and will not be disturbed on appeal unless the record establishes that the trial court has abused its discretion. *Dinovo v. Dinovo*, 238 Neb. 285, 470 N.W.2d 174 (1991).

A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or to refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through the judicial system. *Pendleton v. Pendleton*, 242 Neb. 675, 496 N.W.2d 499 (1993).

Considering respondent's claimed monthly living expenses of $1,824 and her net disposable income, including child support and wages, which totals $1,087 per month, she is far short of what she needs. Under all of the circumstances existing, it cannot be said that the trial court abused its discretion in entering the awards for child support, alimony, and attorney fees that it did.

As to the mandatory nature of the child visitations awarded petitioner, we would foresee nothing but further dispute each time petitioner, because of the requirements of his employment, was unable to meet this schedule. Consequently, we direct that petitioner may notify respondent at least 12 hours in advance of each scheduled visitation of which he is not going to be able to

take advantage. With that modification, we affirm the judgment of the district court.

AFFIRMED AS MODIFIED.