ELISA C. WEAVER, INDIVIDUALLY AND AS NEXT FRIEND OF DEVON E. WEAVER, A MINOR CHILD, APPELLANT, V. DON MARTIN COMPTON III, APPELLEE.

605 N.W.2d 478

Filed February 1, 2000.    No. A-98-1269.

Van A. Schroeder and Cindy Bassett-McGann, of Bertolini, Schroeder & Blount, for appellant.

Edith T. Peebles and Lisa M. Line, of Brodkey, Cuddigan, Peebles & Kaplan, for appellee.

HANNON, MUES, and INBODY, Judges.

HANNON, Judge.

## INTRODUCTION

On March 21, 1997, Elisa C. Weaver sued Don Martin Compton III to establish the paternity of her daughter, Devon E. Weaver, who was born on March 27, 1992, to obtain child support for Devon and other relief. At trial, Don stipulated to paternity. The trial court determined paternity and, inter alia, awarded custody to Elisa with visitation to Don, awarded Elisa $440 per month child support, and required Don to pay 50 percent of any work-related day-care expenses and 50 percent of nonreim-

bursed medical and dental expenses. The trial court denied retroactive support, but awarded Elisa $3,080 as "arrearage," payable at $40 per month, and required each party to pay his or her own attorney fees. Elisa appeals, alleging the trial court erred in not awarding retroactive child support, retroactive day-care expenses, retroactive medical expenses, and attorney fees. We conclude that the $3,080 arrearage could be nothing other than an award for retroactive support; that the $3,080 sum was a reasonable award in view of the payments Don and his parents made for the support of Devon; that Elisa did not pray for a retroactive allowance of day-care and medical expenses and that therefore, the court did not err in not allowing them; but that the trial court erred in not allowing Elisa attorney fees. We therefore affirm the trial court's order, except the denial of attorney fees, which we modify to allow Elisa a reasonable fee.

## BACKGROUND

In 1992, Elisa lived with her parents in San Diego, California, where she gave birth to Devon. Elisa testified that after Devon was born, Don paid one-half of the birthing expenses and child support for 3 months, but that after that, he did not pay anything until September 1994. After September 1994, Elisa did receive support payments from Don personally and through Don's mother and stepfather. Those amounts will be summarized later in this opinion.

Elisa now lives with Devon in Bellevue, Nebraska. Elisa is employed as a claims analyst at a bank, and she provides health insurance for Devon. Devon was born with congenital hypothyroidism, which requires ongoing medical care. At the time of trial, Devon was attending school, and day-care expenses for her averaged approximately $79 a week.

In 1992, Don moved from Omaha to Virginia. Don has visited Devon approximately three times in 6 years, the most recent visitation occurring in February 1997. Don testified that in 1993, he was a full-time student but did not finish college and that at the time of trial, he was employed as a "membership cashier." Don's gross income and net monthly income will be summarized later in this opinion.

Don testified that in 1992, he and Elisa entered into a financial agreement requiring him to provide $200 a month child support for Devon. Don testified that he could have added Devon to his insurance policy so that Devon would be covered under two policies but that after talking to Elisa about it, she felt it was unnecessary because she had her own insurance. In May 1997, Don was married, and he now has two stepchildren, ages 9 and 11.

Brenda Trask, Don's mother, testified that since Devon's birth, Elisa had occasionally called her asking for assistance. Brenda testified that she and her husband provided Elisa with an apartment, paid for utility bills on occasion, and loaned her approximately $600. Brenda and her husband also provided Elisa with a car, which they delivered to Elisa in Omaha.

Brenda testified that she and her husband traveled from Virginia to Omaha once or twice a year to visit Devon and that they were happy to care for Devon. When they came, they purchased clothing, toys, and other items for Devon. Brenda also testified that upon request, they provided Elisa with payments for medical bills for Devon, but that she did not know whether Elisa ever received any reimbursement from her health-care provider. Brenda and her husband also made payments for the support of Devon, which will be summarized later.

The trial court determined (1) that Don is the natural father of Devon and that Don should pay child support in the amount of $440 commencing on October 1, 1998; (2) that an "arrearage" in the amount of $600 be paid at the rate of $40 per month commencing October 1, 1998, until paid in full; (3) that Elisa was not entitled to retroactive child support dating back to the birth of Devon because the doctrine of equitable estoppel precluded her; (4) that Don be awarded specific visitation with Devon; and (5) that both parties pay for their own attorney fees and that all costs of this action be charged to Don. By supplemental order filed September 30, 1998, the trial court modified the decree on its own motion, providing (1) that the arrearage be increased to $3,080 to be paid at the rate of $40 a month and that such arrearage "shall not be subject to interest in the gross amount, but shall become subject to interest for non-payment of any installment"; (2) that Don shall be responsible for 50 percent of any

work-related day-care expenses; (3) that Don shall be responsible for 50 percent of the nonreimbursed medical and dental expenses; and (4) that Don carry Devon on any health insurance that is available through his employment.

## ASSIGNMENTS OF ERROR

Elisa appeals, alleging that the lower court erred when it (1) determined that Don satisfied his oral agreement with Elisa to pay child support for Devon; (2) determined Elisa was precluded from an additional amount of retroactive child support under the doctrine of estoppel; (3) failed to determine retroactive child support pursuant to the Nebraska Child Support Guidelines; (4) failed to calculate Don's share of day-care costs since the birth of Devon pursuant to the guidelines; (5) failed to calculate Don's share of medical expenses incurred on behalf of Devon pursuant to the guidelines; (6) credited certain amounts of money and items paid to Elisa by Don's parents toward Don's child support obligation; and (7) failed to award Elisa attorney fees.

Elisa's first assignment of error alleges that the lower court erred when it determined that Don had satisfied his oral agreement with Elisa to pay child support for Devon. Elisa's brief does not contain any legal or factual discussion regarding this claimed error. Errors assigned but not argued will not be addressed. *Van Ackeren v. Nebraska Bd. of Parole*, 251 Neb. 477, 558 N.W.2d 48 (1997); *Goolsby v. Anderson*, 250 Neb. 306, 549 N.W.2d 153 (1996). We note that to an extent, this issue is considered as a necessary part of other issues discussed below.

## STANDARD OF REVIEW

■ While a paternity action is one at law, the award of child support in such an action is equitable in nature. *Sylvis v. Walling*, 248 Neb. 168, 532 N.W.2d 312 (1995).

■ A trial court's award of child support in a paternity case will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State on behalf of S.M. v. Oglesby*, 244 Neb. 880, 510 N.W.2d 53 (1994).

■ The ultimate test for determining the appropriateness of awards of alimony and child support is reasonableness as deter-

mined by the facts of each case, and the trial court's determination normally will be affirmed in the absence of an abuse of discretion. *Baratta v. Baratta*, 245 Neb. 103, 511 N.W.2d 104 (1994).

## DISCUSSION

*Retroactive Child Support.*

Elisa asserts in her third assignment of error that the lower court erred when it failed to determine retroactive child support in the matter pursuant to the Nebraska Child Support Guidelines.

Child support in a paternity action is to be determined in the same manner as in cases of children born in lawful wedlock. Neb. Rev. Stat. § 43-1402 (Reissue 1998). An out-of-wedlock child has the statutory right to be supported to the same extent and in the same manner as a child born in lawful wedlock; the resulting duty of a parent to provide such support may, under appropriate circumstances, require the award of retroactive child support. *State on behalf of Joseph F. v. Rial*, 251 Neb. 1, 554 N.W.2d 769 (1996). The requirement of support begins at the time of the birth of the child, whether the child is born in lawful wedlock or otherwise. *State on behalf of Matchett v. Dunkle*, 244 Neb. 639, 508 N.W.2d 580 (1993).

The Nebraska Supreme Court has held that it is "entirely appropriate to use the guidelines in determining the amount of retroactive support to award a child born out of wedlock." *Sylvis*, 248 Neb. at 174, 532 N.W.2d at 316. Additionally, the Supreme Court has also held that the guidelines are "presumptively applicable in the setting of child support in a paternity action." *Id.*

Under paragraph C of the Nebraska Child Support Guidelines, the Supreme Court provides that the guidelines shall be applied as a rebuttable presumption and that child support orders shall be established in accordance with the guidelines unless one or both parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied.

We summarize the evidence of Don's and Elisa's incomes from 1992 to 1997 in the following table:

| Year | Don's Gross Yr. Income | Don's Net Monthly | Elisa's Gross Yr. Income | Elisa's Net Monthly |
|------|------|------|------|------|
| 1992 | $11,931 | $ 757 | $ 8,863 | $ 601 |
| 1993 | 0 | 0 | 20,307 | 1,374 |
| 1994 | 12,317 | 832 | 15,097 | 1,062 |
| 1995 | 19,818 | 1,395 | 11,837 | 857 |
| 1996 | 25,649 | 1,832 | 15,003 | 1,084 |
| 1997 | 29,964 | 1,992 | 16,255 | 1,172 |

The following table shows what would have actually been due under the guidelines for the applicable year (assuming that the parties' incomes were as found above and that the payments were actually made by Don and his parents to Elisa):

| Year | Due Under Guidelines | Payments by Don | Don's Parents' Contributions |
|------|------|------|------|
| 1992 | $ 1,449 | $ 600 | $ 0 |
| 1993 | 600 | 0 | 100 |
| 1994 | 1,884 | 570 | 1,000 |
| 1995 | 3,156 | 400 | 2,970 |
| 1996 | 5,178 | 3,877 | 400 |
| 1997 | 5,604 | 1,603 | 0 |
| | $17,871 | $7,050 | $4,470 |

Total amount due under guidelines $17,871
Total amount paid 11,520
Difference between guidelines and payments made $ 6,351

The above figures do not include the value of a 1991 Nissan Stanza purchased by Brenda and her husband and delivered to Elisa. Brenda testified that the car was delivered "for Devon." On cross-examination, Brenda testified that she gave Elisa the car with the understanding that it was a debt to be repaid, but she then testified that she had not received any payments from Elisa. Elisa and Brenda both testified that the value of the car was $6,000. Elisa testified that $3,000 of the purchase value of the car was intended to compensate her because her former car was repossessed after Don paid only three support payments in 1992, which was in violation of their 1992 support agreement. Elisa also testified that Brenda's husband signed the title to the car over to her and told her that she did not have to repay him for the car.

*Equitable Estoppel.*

In its order, the trial court found that Elisa agreed to and accepted the $200 per month amount, plus additional consideration, and that therefore, she was not entitled to child support retroactive to the birth of Devon based upon the doctrine of equitable estoppel. Elisa's second assignment of error asserts that the lower court erred when it made that determination.

▪ Equitable estoppel is an affirmative defense. See *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989). An affirmative defense must be raised in the pleadings to be considered by a trial court and on appeal. *Nebraska Pub. Emp. v. City of Omaha*, 244 Neb. 328, 506 N.W.2d 686 (1993). Don filed a responsive pleading to Elisa's petition for paternity, which essentially amounted to a general denial. Don's only admissions were that Elisa resides in Sarpy County, Nebraska, that he resides in Fairfax County, Virginia, and that the two were never married. Don never pled equitable estoppel in his pleadings, and therefore, the judge erred when he held that retroactive child support was precluded by equitable estoppel. In addition, Don did not fulfill any agreement to pay support. We think a more sound analysis of the situation is to consider the payments Don made under the agreement in the process of considering the reasonableness of retroactive support.

The supplemental order awarded Elisa a $3,080 "arrearage." We are not sure what the court meant by arrearage or what obligation it found Don to be in arrears on. After studying the decree, we cannot discern how the trial court arrived at the $3,080 amount. Under the facts and circumstances of this case, we conclude that this figure should not be considered an arrearage, but, instead, retroactive support in that amount. The question is, therefore, Was the allowance of that amount for child support arrearage an abuse of the trial court's discretion?

As we have computed above, under the Nebraska Child Support Guidelines, Don would have owed Elisa $17,871 for retroactive support, but he paid only $7,050 of that amount. However, the evidence shows his parents paid Elisa a considerable amount. Should these payments be considered? Elisa's

sixth assignment of error asserts that the trial court erred when it credited certain amounts of money and items conveyed to her by Don's parents toward Don's child support obligation.

In *Contra Costa Cty. ex rel. Petersen v. Petersen*, 234 Neb. 418, 451 N.W.2d 390 (1990), the Nebraska Supreme Court credited the respondent for child support payments made directly to the children's mother by the respondent's parents. The mother admitted in her own testimony that she received a sum of money paid directly to her by the respondent's parents and that she used the support for the children. However, the court in *Contra Costa Cty. ex rel. Petersen* did not allow credit for payment made to the children by the respondent's parents.

In this case, Don's mother and stepfather made payments for the support of Devon in the amount of $4,470. The evidence shows that the payments were paid directly to Elisa. The $4,470 figure is exclusive of birthday, Christmas, and other gifts that Devon received from Don's parents. We conclude that under *Contra Costa Cty. ex rel. Petersen*, the trial court did not err if it credited Don for child support payments made directly to Elisa by his parents.

The value of the car Don's parents transferred to Elisa is another consideration. The nature of that transfer is not all that clear. Whether the car was given in recognition of an obligation arising when Elisa lost her car to foreclosure or for the support of Devon is not apparent. It is clear, however, that Elisa needed a car to properly care for Devon and that Don's parents transferred a $6,000 car to her for that purpose. If this transfer was in recognition of the $3,000 car Elisa lost through foreclosure of her other car due to nonpayment, the new car was at least worth approximately twice the value of that car. We cannot determine whether the trial court allowed credit for that car or some part of it, but we find that the trial court would not have abused its discretion in considering the value of the car, or part of it, as a payment for support.

The ultimate test in determining the appropriateness of awards of alimony and child support is reasonableness as determined by the facts of each case, and the trial court's determination normally will be affirmed in the absence of an abuse of discretion. *Helms v. Helms*, 234 Neb. 630, 452 N.W.2d 269 (1990).

As part of our de novo review, we have concluded that the gross retroactive support that Elisa would have been entitled to receive was $17,871 and that against that sum, Don should be allowed credit for the $7,050 he paid, the $4,470 his parents paid, and at least one-half the value of the car transferred to her. If these amounts are allowed, the $3,080 arrearage allowed by the trial court is very near to the amount we would have determined as unpaid retroactive support.

■ A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or to refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through the judicial system. *Baratta v. Baratta*, 245 Neb. 103, 511 N.W.2d 104 (1994). We cannot say the trial court abused its discretion in setting the amount of retroactive support at $3,080.

*Retroactive Day-Care Expenses and Medical Expenses.*

Elisa's fourth and fifth assignments of error assert that the trial court failed to calculate Don's share of day-care costs and medical expenses since the birth of Devon pursuant to the Nebraska Child Support Guidelines.

The guidelines specify that child-care expenses are to be considered independently of the support amount. Elisa's petition prayed for (1) a decree declaring Don the biological father of Devon; (2) a judgment against Don for the reasonable expenses of her pregnancy, labor, delivery, and recovery; (3) Elisa to be declared the custodial parent of Devon and Don to be ordered to pay fair and reasonable child support for Devon from her birth to the present, less any credits for all amounts previously paid; (4) a judgment for continuing support for Devon from the date of judgment until she attains the age of 19 years, dies, or becomes emancipated; (5) Don to be ordered to pay the costs of this action, any genetic testing, and reasonable attorney fees; and (6) all other relief as permitted by law or equity.

■ The trial court in this case did not order the day-care or medical expenses dating back to Devon's birth; however, Elisa did not request such. Elisa did not allege the amount of day-care

or prepetition medical expenses, nor did she request them in her petition. In its order, the trial court stated that the issues presented were (1) setting of support and visitation, (2) retroactivity of support, and (3) awarding of attorney fees. The supplemental order included an allowance for postdecree child-care and medical expenses. We recognize that judges can and do frequently grant relief that is not specifically prayed for under general allegations of relief; however, we find no cases that have held it is error for a judge not to grant relief which was not requested in the pleadings. In this case, it is not error for the court to fail to grant relief which was not requested in the petition.

*Attorney Fees.*

Elisa claims that the trial court erred when it failed to award her attorney fees. "Attorney fees are recoverable in Nebraska only when provided for by law or allowed by custom." *Cross v. Perreten*, 257 Neb. 776, 783, 600 N.W.2d 780, 786 (1999). Neb. Rev. Stat. § 43-1412(3) (Reissue 1998) provides:

> If a judgment is entered . . . declaring the alleged father to be the father of the child, the court shall retain jurisdiction of the cause and enter such order of support, including the amount, if any, of any court costs and attorney's fees which the court in its discretion deems appropriate to be paid by the father.

In a paternity action, attorney fees are reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial judge. Absent such an abuse, the award will be affirmed. *Morrill County v. Darsaklis*, 7 Neb. App. 489, 584 N.W.2d 36 (1998); *State ex rel. Mooney v. Duer*, 1 Neb. App. 84, 487 N.W.2d 575 (1992).

In the *Cross* case, the Supreme Court saw fit to specifically overrule *State ex rel. Reitz v. Ringer*, 244 Neb. 976, 510 N.W.2d 294 (1994), which held that attorney fees should not be awarded in paternity cases. The action in *Cross* by the Supreme Court was probably necessary because § 43-1412 was changed. Before 1994 Neb. Laws, L.B. 1224, was enacted, § 43-1412 did not provide for attorney fees in paternity actions. See 1986 Neb. Laws, L.B. 813. Since 1994, the statute

has allowed for attorney fees in paternity actions. See § 43-1412 (Reissue 1998). In the past, there was confusion on this issue, and apparently, the Supreme Court used *Cross* to attempt to clarify the point.

As previously stated, a judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or to refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through the judicial system. *Baratta v. Baratta*, 245 Neb. 103, 511 N.W.2d 104 (1994).

We find no cases where a trial court's refusal to award attorney fees has been reversed on appeal. We observe that in affirming the award of attorney fees in the *Cross* case, the Supreme Court noted that the issue of custody was contested and that the party who was awarded fees prevailed on that issue. In this case, in spite of serious nonjudicial admissions before the action was filed, Don denied paternity until the day of the trial, and the issue of support, particularly retroactive support, was seriously contested. Elisa received substantial relief and is clearly of limited means. We do not know whether the trial court failed to award attorney fees because of possible confusion due to the changing law or whether the judge determined such an award was not justified. However, on the facts in this case, as part of our de novo review, we conclude that a reasonable attorney fee for the services of Elisa's attorney in the district court would be $2,000.

## CONCLUSION

We determine that the trial court did not err in awarding only $3,080 prepetition retroactive support and in not awarding prepetition day-care and medical expenses. We modify the district court's order by awarding Elisa a reasonable attorney fee of $2,000.

AFFIRMED AS MODIFIED.