IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

VANWESTEN V. VANWESTEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KRISTINE M. VANWESTEN, APPELLEE,

V.

JEREMY R. VANWESTEN, APPELLANT.

Filed February 18, 2025.   No. A-24-321.

Appeal from the District Court for Thayer County: DAVID J. A. BARGEN, Judge. Affirmed.

Joseph D. Neuhaus, of Cordell Law, L.L.P., for appellant.

Nicholas D. Valle, of Langvardt, Valle & James, P.C., L.L.O., for appellee.

RIEDMANN, Chief Judge, and PIRTLE and ARTERBURN, Judges.

RIEDMANN, Chief Judge.

## I. INTRODUCTION

The district court for Thayer County refused to find a former wife in contempt for alleged violations of a parenting plan because there was no showing her actions were done in willful or contumacious disobedience of the parenting plan. Her former husband appeals. Finding no abuse of discretion by the district court, we affirm.

## II. BACKGROUND

Jeremy R. VanWesten and Kristine M. VanWesten were married in 2008 and are the biological parents of two minor children born in 2009 and 2012. In 2018, Kristine filed a complaint for dissolution of marriage. In November 2021, an order was entered dissolving the marriage and awarding the parties joint legal and physical custody of the minor children. A "court-created" parenting plan was included in the order.

- 1 -

Pursuant to Kristine's subsequent motion to alter or amend, the court issued an amended decree in March 2022, which incorporated an amended parenting plan that altered multiple provisions of the original parenting plan. Relevant to this appeal, the amended decree maintained the joint legal and physical custody of the children and provided that because of the joint legal custody, each parent shall have the legal "authority to make final decisions concerning the parenting functions necessary to raising the children." Both parents were entitled to "unlimited telephone and webcam parenting time with the children at reasonable times." As to medical care, the amended decree stated:

> Because the parents have joint legal and physical custody of the children, both parents shall participate and cooperate in the choices regarding the children's education, religious upbringing and medical needs. Recognizing that it is important that both parents participate and cooperate with each other to bring up the children in a loving, stable environment, both parents shall, in an effort to encourage this environment, notify the other parent at a meaningful time in advance of any decision regarding enrollment in school, the beginning of participation in religious activities, and the beginning of health care involving the children in order to learn the other parent's wishes in these matters. The parents shall freely discuss these three areas with one another in an effort to reach an agreement on these issues.

In December 2022, Jeremy filed a verified application for an order to show cause. In his verified application, he asserted that Kristine was in violation of the amended decree for multiple reasons including Kristine's willful and contumacious failure to allow him phone calls with the children while they were in her care, inform him in advance of medical decisions made for the children, allow him to cooperate and be involved in their medical care, as well as to comply with other provisions of the parenting plan. The application for an order to show cause did not identify the specific provisions of the amended decree which Kristine had allegedly violated.

The district court entered an order to show cause and scheduled a hearing at which both Jeremy and Kristine testified. While Jeremy's testimony alleged Kristine had violated the amended decree in various ways, his appeal brief specifically addresses only Kristine's interference of his phone calls with the children, and her obstruction of his ability to participate in medical decisions for the children. Thus, as pertinent to this appeal, Jeremy testified that Kristine frequently failed to answer his phone calls to the children, "seventy-five percent" of the time, in violation of the amended decree provision allowing the noncustodial parent to have "unlimited" phone calls with the children. He offered his phone records, which he testified showed he had called the children consistently since the amended decree was entered and Kristine had not answered the majority of his phone calls, nor had she returned his calls. He also introduced other exhibits of the parties' text messages which showed he had sent Kristine numerous texts requesting phone calls, the majority of which she did not respond to.

Kristine also introduced phone records, which she testified showed phone calls to Jeremy's house and cell phone and, although she did not reply by text, she would have the children call him in response to his text messages. Kristine also testified she missed Jeremy's calls because she was occupied at that moment and that it was difficult for her to get the children to return his calls because they regularly did not want to speak with him; however, she never placed restrictions on the phone calls nor encouraged the children to not return Jeremy's calls.

Regarding the parties' communication concerning the children's medical care, Jeremy testified Kristine "never discussed a COVID vaccine" with him and he was never advised in advance that the children even had appointments for the vaccine. He explained that his position on having the children vaccinated for COVID was that he wanted to have a conversation with Kristine and review the data regarding the efficacy of the vaccine for children. However, Kristine took the children to be vaccinated without giving him notice. Jeremy testified to his belief that Kristine's actions were in violation of the amended decree provision which required the parents to participate and cooperate in making decisions for the children's medical needs.

Kristine testified that during the relevant time period, COVID vaccinations were hard to come by. After being on the waiting list for some time, she was notified one morning that vaccines were available in the local area and she would need to bring the children in that same day.

Kristine testified she contacted Jeremy about the initial vaccine "immediately" that morning, as shown by the parties' text messages. These messages were offered and received at trial and reflect that on March 24, 2022, at 9:21 a.m., Kristine texted Jeremy that COVID vaccines were available, and she would be taking the kids to be vaccinated after school that day. Jeremy responded at 9:27 a.m. that he was concerned about the safety of the vaccine and told Kristine he would send her research on the matter; however, nothing more was communicated regarding the research until 9:16 p.m. Kristine testified she took the children to be vaccinated that afternoon because she did not want to miss the opportunity.

The children eventually received two additional COVID booster shots. Kristine stated Jeremy was aware of the second shot a month prior to the appointment. However, she did not remember whether she had told him about the third shot. She stated she may have been "to the point of over it" and was frustrated by Jeremy throwing a "fit" every time.

Following the show cause hearing, the district court entered its order. As a preliminary matter, the district court noted that Jeremy did "not specify which specific provisions of the Amended Decree are alleged to have been violated" and explained that it would therefore rely on Jeremy's "closing brief to guide it to provisions of the Amended Decree [Jeremy] specifically alleges [Kristine] violated." It analyzed six different provisions: phone calls with children, school absences, actively involved parenting, parenting time (pick-up time and vacation), advanced notification of medical decisions, and "Remaining Allegations." It concluded that Jeremy failed to carry his burden of proof to show Kristine was in willful and contumacious disobedience of the amended decree. Jeremy appeals.

## III. ASSIGNMENTS OF ERROR

Jeremy assigns as error, consolidated, that the district court (1) erred and abused its discretion by denying his verified application for an order to show cause and (2) abused its discretion by "failing to preserve and enforce" his rights through its denial of his verified application for an order to show cause.

## IV. STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the district court's (1) resolution of issues of law are reviewed de novo, (2) factual findings are reviewed for

clear error, and (3) determinations of whether a party is in contempt and of the sanction imposed are reviewed for an abuse of discretion. *Hawks v. Hawks*, 32 Neb. App. 70, 993 N.W.2d 688 (2023).

## V. ANALYSIS

### 1. DISTRICT COURT'S REFUSAL TO FIND KRISTINE IN CONTEMPT OF AMENDED DECREE

The essence of Jeremy's argument is that the district court erred in its determination that Kristine's denying him phone calls with the children, deciding to vaccinate the children without his consent, and failing to inform him in advance of the children's COVID booster shots did not constitute a violation of the amended decree, and thus the court abused its discretion in failing to find Kristine was in contempt. We note Jeremy does not assert on appeal that he had no notice of the first COVID vaccine, as he had testified to at trial.

As stated above, determinations of whether a party is in contempt are reviewed for an abuse of discretion. See *Hawks v. Hawks, supra*. A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Krejci v. Krejci*, 304 Neb. 302, 934 N.W.2d 179 (2019). When evidence is in conflict, the appellate court considers and may give weight to the fact that the district court heard and observed the witnesses and accepted one version of the facts rather than another. See, e.g., *Hernandez v. Dorantes*, 314 Neb. 905, 994 N.W.2d 46 (2023).

Willful disobedience is an essential element of contempt. See *Hawks v. Hawks*, *supra*. Willfulness is a factual determination to be reviewed for clear error. *State on behalf of Mariah B. & Renee B. v. Kyle B.*, 298 Neb. 759, 906 N.W.2d 17 (2018). "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order. See *Hawks v. Hawks, supra*. Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and convincing evidence. *Id*.

### (a) Pleading Issue

Jeremy argues that the district court erred in finding that his application was improperly pled, referring to the district court's statements regarding Jeremy's failure to specify the specific provisions of the amended decree he claimed to have been violated. However, despite the court's statement, it proceeded to analyze six categories of alleged violations by Kristine. From our review, it appears the district court did not specifically address three areas: facilitating the children's events, disparaging the other parent, and providing access to records.

However, on appeal, Jeremy does not provide any argument as to these three areas. Therefore, even if the district court was incorrect in its interpretation of the pleading requirements, other alleged violations not discussed by the district court are not before us. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Chafin v. Wisconsin Province Society of Jesus*, 301 Neb.

94, 917 N.W.2d 821 (2018). Because Jeremy has not argued Kristine violated any provision other than those addressed by the district court, we do not address this argument.

We pause here to address what appears to be a misconception in Jeremy's brief. He states that in addition to the alleged violations of the phone call and health care provisions, Kristine violated many other provisions of the amended decree and because "this Court reviews de novo the issues of the trial court's finding of law, this Court is empowered to find [Kristine] in contempt for numerous violations of the Amended Decree." Brief for appellant at 13. While we do not disagree with this statement, our de novo review does not alleviate an appellant's obligation to specifically argue how the district court erred. See *Chafin v. Wisconsin Province Society of Jesus, supra* (recognizing both de novo review and appellant's obligation to specifically assign and argue errors and limiting review to latter).

Although Jeremy's application claimed Kristine violated the amended decree in 11 different ways, his brief on appeal provides substantive argument only on Kristine's alleged denial of phone calls with the children and her decision to vaccinate the children for COVID without appropriate discussion with him. Jeremy's brief lists various other violations by Kristine, however, he does not argue them other than to include citations to his closing brief provided to the district court. The Nebraska Supreme Court has cautioned, however, that for purposes of briefs filed with the appellate courts, they do not encourage the practice of incorporating by reference any content material to a party's argument, and any party who does incorporate by reference does so at the party's own peril. See *State v. Garcia*, 315 Neb. 74, 994 N.W.2d 610 (2023). Nebraska courts have long held that, to be considered by an appellate court, the party asserting the alleged error must both specifically assign and specifically argue the error in the party's initial brief. See *Timothy L. Ashford, PC LLO v. Roses*, 313 Neb. 302, 984 N.W.2d 596 (2023). We limit our review to the two violations Jeremy argues: refusal to allow phone calls and failure to appropriately discuss with him medical decisions regarding the children.

(b) Phone Calls

Jeremy argues the evidence is clear that Kristine knew she was required to allow phone calls between Jeremy and the children but repeatedly failed to communicate with him to facilitate such calls. He premises this alleged violation on a belief that he was entitled to phone calls with the children every Monday and Wednesday at 5 p.m., but that Kristine often would not answer her phone or respond to his text messages.

Jeremy asserts that it was reasonable for him to expect Kristine to allow him to speak with the children at these times because a previous order provided that the children should have phone calls with the noncustodial parent every Monday, Wednesday, and Friday at 5 p.m. However, the parties' amended decree states, "[t]he parties shall have unlimited telephone and webcam parenting time with the children at reasonable times."

The district court found the amended decree provision lacked a definition of "reasonable times." The court determined the language of the provision allows the parties to decide what circumstances are to be considered a "reasonable time," and that the evidence showed, for many of the times Jeremy requested a phone call, it was not practical for Kristine to respond. Thus, the district court found that Kristine did not "intend[] to violate the Amended Decree in stubborn defiance of it."

Our review of the record shows that Kristine admitted to not responding to many of Jeremy's text messages and phone calls. However, she also testified Jeremy had imposed a rule that phone calls were to occur at 5 p.m. on Mondays and Wednesdays, and Jeremy testified that he called the children at these times. Kristine explained she had difficulty making this time work because she was typically driving the children home from school at that time and does not use her cell phone while driving; also, Jeremy has previously called while she and the children are busy. Kristine described particular occasions in which he has called while she and the children are visiting her mother, or she is preparing or eating dinner with the children. She testified she had never put any restrictions on phone calls between the children and Jeremy and has always instructed the children to return his calls, even giving consequences when the children refuse to do so.

Given the language of the provision pertaining to phone calls, the district court did not err when it determined Kristine had not violated the amended decree. The previous provision which designated 5 p.m. phone calls was contained within a modification of the parties' temporary custody order prior to the dissolution of their marriage and was not controlling at the time of the show cause hearing. Rather, the applicable language of the amended decree only required Kristine to allow phone calls during "reasonable times." Kristine presented evidence that Mondays and Wednesdays at 5 p.m. were not reasonable for her, and that she actively encouraged the children to return Jeremy's calls. Based on this evidence, we find no error by the district court in determining Jeremy's self-imposed time requirement was not a "reasonable time" for him to have phone conversations with the children while they were in Kristine's custody. Accordingly, the district court did not abuse its discretion in refusing to find Kristine in contempt of the phone call provision.

### (c) COVID Vaccinations

Jeremy argues the district court abused its discretion in refusing to find Kristine in contempt because he had demonstrated "[s]he unilaterally decided to vaccinate the children against COVID, and then get them booster shots, without [his] knowledge, and without appropriate discussion with him." Brief for appellant at 24.

Jeremy points us to a provision of the amended decree which states

both parents shall . . . notify the other parent at a meaningful time in advance of any decision regarding . . . the beginning of health care involving the children in order to learn the other parent's wishes in these matters. The parents shall freely discuss these [] areas with one another in an effort to reach an agreement on these issues.

He argues that Kristine's decision to have the subsequent booster shots administered violated the requirement that Kristine notify Jeremy in advance of medical decisions concerning the children's care. He further argues that Kristine's decision to vaccinate the children over his objection constituted a violation of the provision requiring the parties to discuss health care decisions in an effort to reach an agreement.

While Jeremy testified he was never given prior notice of any of these vaccines, our review of the record shows Kristine texted Jeremy and informed him of the children's initial COVID vaccinations prior to the appointment. Therefore, he had advance notice of the initial vaccine and

does not appear to argue otherwise on appeal. As to the booster shots, Kristine testified she had informed Jeremy of the second shots a month prior to the children's appointments, but that she could not remember if she had informed him prior to the third shots.

Regardless of whether Kristine gave Jeremy advanced notice of the booster shots, the district court held that the amended decree required notification only of "the beginning of health care" and "[t]he booster shots were, as their name implies, simply follow-up care to what was earlier begun with their initial shots." We agree that the booster shots were a continuation of the initial treatment and did not require further notice.

Regarding Jeremy's allegation that Kristine unilaterally decided that the children receive the first COVID vaccination in violation of the amended decree, the district court noted that the amended decree "does not require agreement." Rather "[i]t requires [the parties] 'participate and cooperate' and 'freely discuss these three areas with one another in an effort to reach an agreement on these issues.'"

Kristine notified Jeremy of the availability of the vaccine the morning she received the information. Jeremy expressed that he was concerned about the safety of the vaccine and told Kristine he would send her research on the matter, but he did not follow up until that night despite knowing of the afternoon appointments. Due to the limited availability of the vaccine, Kristine proceeded with the vaccinations.

We agree with the district court that Kristine's actions did not violate the amended decree. Although Jeremy indicated a desire to further discuss the issue, he did not timely provide the information he wanted Kristine to consider, and the language of the amended decree does not require agreement. Further, as noted by the district court, Kristine "was making decisions in the midst of an unprecedented health emergency, having been told there were limited supplies of COVID shots available for only a short time."

Accordingly, we find no abuse of discretion in the district court's refusal to find Kristine acted in willful and contumacious disobedience of the amended decree.

### 2. MODIFICATION OF AMENDED DECREE

Jeremy argues that the district court acknowledged the amended decree's nonspecific language which led to conflict between the parties but did not modify the provisions to provide further guidance. He specifically points to the absence of a specific time for phone calls and "specific provisions for cooperation of the Parties, and other provisions that would properly direct appropriate conduct between the Parties." Brief for appellant at 26-27. He argues the district court had the inherent judicial power and authority to "do all things necessary and proper for the administration of justice," including modifying the parties' amended decree and parenting plan. *Id.* at 26. Jeremy asserts, by failing to exercise its inherent authority to provide equitable relief and modify the amended decree to ensure specificity and maximum cooperation between the parties, the court committed an abuse of discretion.

A court's continuing jurisdiction over a dissolution decree includes the power to provide equitable relief in a contempt proceeding. See *Becher v. Becher*, 311 Neb. 1, 970 N.W.2d 472 (2022). Where a situation exists that is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation. *Id.* Moreover, Neb. Rev. Stat. § 42-364.15 (Reissue 2008) provides, in part:

Upon the filing of a motion which is accompanied by an affidavit stating that either parent has unreasonably withheld or interfered with the exercise of the court order after notice to the parent and hearing, the court shall enter such orders as are reasonably necessary to enforce rights of either parent including the modification of previous court orders relating to parenting time, visitation, or other access.

When a party is given notice, by means of a motion to show cause, that he or she could be found in contempt, he or she is also given notice of a possible modification pursuant to § 42-364.15. See *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). Thus, having given notice as required by § 42-364.15, the district court has the equitable authority, within the confines of a contempt proceeding, to modify the parenting plan as it related to issues that caused the finding of contempt. See *Martin v. Martin, supra*.

Here, the district court did not find Kristine in contempt and although Jeremy requested the court to order any "further relief as this Court may deem just and equitable" in his application for an order to show cause, our record does not reveal any specific request by Jeremy to modify the amended decree to include the clarifying language he now claims the court should have added. It is not error for a trial court to fail to grant relief which was not requested. See *Weaver v. Compton*, 8 Neb. App. 961, 605 N.W.2d 478 (2000). We reject this argument.

## VI. CONCLUSION

For the reasons stated herein, we find the district court did not err nor commit an abuse of discretion, in failing to find Kristine in contempt; therefore, we affirm the district court's order.

AFFIRMED.