STATE OF NEBRASKA AND J.M., APPELLEES, V. CLARK SMITH, APPELLANT.

437 N.W.2d 803

Filed April 7, 1989.   Nos. 87-503, 87-665.

Richards & Richards for appellant.

Sara Olsen, Deputy Scotts Bluff County Attorney, for appellees.

HASTINGS, C.J., WHITE, CAPORALE, and FAHRNBRUCH, JJ., and COADY, D.J.

FAHRNBRUCH, J.

Claiming there was insufficient evidence and that the district court in a jury-waived trial erroneously admitted evidence regarding genetic testing, Clark Smith appeals a finding that he is the father of D.M.M., the minor child of the plaintiff J.M.

Smith also appeals a court order in another case requiring him to pay $200 per month child support for D.M.M. On appeal, the two cases were consolidated for briefing and argument. We affirm the trial judge in both cases.

In an action at law, this court on appeal views the evidence in the light most favorable to the prevailing party. See, *Knutson v. Snyder Industries, Inc., ante* p. 374, 436 N.W.2d 496 (1989); *Fisher Corp. v. Consolidated Freightways*, 230 Neb. 832, 434 N.W.2d 17 (1989). A paternity action is an action at law. *State ex rel. S.B. v. Dybdall*, 226 Neb. 473, 411 N.W.2d 649 (1987).

Taking the view of the evidence in the light most favorable to the plaintiffs-appellees in this case, the evidence reflects that on February 28, 1985, J.M. gave birth to D.M.M. out of wedlock. No father was listed on the birth certificate. A petition to establish paternity was filed against Smith in September 1985. Plaintiffs requested genetic testing, which the court ordered in December of 1985. Blood was drawn from D.M.M., J.M., and Smith in January 1986 at Western Pathology Consultants, P.C., in Scottsbluff, Nebraska. The samples were sent to Memorial Blood Center in Minneapolis, Minnesota, for genetic testing. Herbert F. Polesky, M.D., the director of the center, supervised the testing. The results of that testing were sent to counsel for both parties. The petition was dismissed without trial and without prejudice.

A second petition to determine paternity was filed by the State and J.M. against Smith. Genetic tests were not requested or ordered after the second petition was filed.

On January 13, 1987, Smith filed a motion objecting to the introduction of the results of the previous genetic testing. The court overruled the motion. Smith also timely objected to the introduction of a verified written report concerning the chain of custody of the blood samples. See Neb. Rev. Stat. § 43-1416 (Reissue 1988). In response to this objection, the plaintiffs filed a notice to take Dr. Polesky's deposition by written questions and mailed a copy of the notice and written questions to Smith's attorney.

Smith waived his right to a jury trial, and a bench trial was held on April 30, 1987. At trial, J.M. testified that after dancing several times with Smith, she and the defendant left the dance and went to Smith's home, where they had sexual intercourse several times in the early morning hours of May 27, 1985. She stated she left Smith's home around 8 a.m. Her testimony was corroborated in part by a friend, who saw J.M. and Smith dancing together several times. The friend, who went to the dance with J.M., also testified that J.M. told her to obtain a ride home because J.M. was going to Smith's home for the night. The friend said she saw Smith sitting in the driver's seat of his pickup truck but did not see Smith leave, nor did she see J.M. leave in her car. J.M.'s mother testified that J.M. was not

where she was supposed to be in the early morning hours of May 27, 1985.

Smith denied that J.M. was at his home in the early morning hours of May 27, 1985, and denied that he had had sexual intercourse with her. Friends of his testified that they arrived at Smith's house substantially before 8 a.m., May 27, 1985, and that J.M. was not there at that time. Smith's friends also testified that Smith was too drunk to drive his truck home from the dance. Obviously, the court did not accept these versions of the events. It is the province of the fact finder to judge the credibility of witnesses; it is not the province of this court to resolve conflicts in the evidence or to weigh the evidence. *State ex rel. S.B. v. Dybdall, supra*; *Kimberling v. Omaha Public Power Dist.*, 225 Neb. 744, 408 N.W.2d 269 (1987).

The physician who cared for J.M. during her pregnancy testified that May 27, 1985, was within the time conception could have occurred, given the date of the child's birth, the date of J.M.'s last menstrual period, and the average time of gestation. The physician also testified the child was not premature.

In regard to the genetic testing and its results, Smith's claims can be summarized as follows: (1) that a test obtained in a prior lawsuit between the parties is not admissible, even though the first case was dismissed without trial and without prejudice; (2) that there was insufficient evidence to prove the chain of custody of the samples taken from the parties and child through the time the samples were tested and from the time of the tests to when the samples were introduced into evidence; and (3) that the expert's testimony as to the results of the tests should not have been received in evidence.

The procedure to obtain genetic testing is explicitly set forth in Neb. Rev. Stat. § 43-1414 (Reissue 1988). Neb. Rev. Stat. §§ 43-1415 and 43-1416 (Reissue 1988) designate the method of introducing the tests into evidence, their admissibility, and the evidence necessary to show the chain of custody of the samples. Section 43-1415 provides that without an objection the test results may be introduced by a verified written report of the expert conducting the test. In Smith's case, the plaintiffs did not rely upon a verified written report, but introduced the

deposition of the expert taken by written questions pursuant to Neb. Ct. R. of Disc. 31 (rev. 1986). Admission in evidence of the deposition was proper. Neither did plaintiffs rely upon a verified written report to prove chain of custody of the samples taken for genetic testing. The chain of custody was properly proven by testimony.

We have carefully reviewed the record and Neb. Rev. Stat. §§ 43-1415 through 43-1418 (Reissue 1988), and find that the plaintiffs fully complied with those statutes. The trial court was correct in admitting into evidence the results of the genetic testing.

Smith's complaint that a genetic test taken in a previous action where the case has been dismissed without trial and without prejudice cannot be used in a second case has no merit. Section 43-1414 provides that a court may, upon its own motion, or shall, at the request of a party, order genetic testing to be performed on the mother, child, and alleged father. The purpose of this statute is to make such evidence available for use at the trial. In this instance, the evidence was already available from a previous action, which had been voluntarily dismissed without prejudice by the plaintiffs. There was no need to repeat the testing. In addition, the release Smith signed on January 8, 1986, specifically authorized the use of the results of the blood testing in future actions to determine paternity. Therefore, the trial court did not err in admitting the test results.

The results of the genetic testing revealed that there was a 98.473-percent probability that Smith was the father of D.M.M. This, together with J.M.'s testimony as corroborated by her witnesses, was more than sufficient for the trial court to hold that Smith is the father of D.M.M.

In a separate action, Smith was ordered to pay the $1,339.53 medical cost of J.M.'s pregnancy. In addition, Smith was ordered to pay $200 per month in child support for D.M.M.

Smith testified that before 1986, he worked as a state brand inspector, making approximately $18,000 per year. At the beginning of 1986, after he knew he was accused of being D.M.M.'s father, he quit his job to work on his parents' ranch. He receives no compensation for working on the ranch other than room and board. He occasionally works day labor jobs as

a ranch hand for approximately $50 per day. This work varies depending on the season. He also raises a few cattle on his own. His tax returns indicate he has continually lost money on this venture. The court found, although Smith had made a business decision to cease being a brand inspector, it was not a factor to be considered in determining the amount of child support he should pay. Based upon his earning capacity, as evidenced by his earnings as a brand inspector, the court ordered Smith to pay $200 per month in child support. Taking into consideration J.M.'s income and this court's child support guidelines, we cannot find that the trial court abused its discretion in ordering Smith to pay $200 per month child support for D.M.M. The trial court's award of child support after determination of paternity will not be disturbed on appeal absent an abuse of discretion. See *Hanson v. Rockwell*, 206 Neb. 299, 292 N.W.2d 786 (1980). The trial court did not abuse its discretion in requiring Smith to pay $200 per month child support for D.M.M. That order should continue until D.M.M. reaches majority age or is emancipated, or until further order of the trial court.

For the foregoing reasons, the judgment of paternity and the order for child support are affirmed.

AFFIRMED.