MORRILL COUNTY, NEBRASKA, ON BEHALF OF HAYDEN F. CAHOY,
A MINOR CHILD, APPELLEE, V. PETER DARSAKLIS, APPELLANT,
AND JENNIFER CAHOY, APPELLEE.
584 N.W. 2d 36

Filed August 11, 1998.    No. A-97-1040.

Tylor J. Petitt, of The Van Steenberg Firm, P.C., for appellant.

Jean Rhodes, Morrill County Attorney, for appellee County.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellee Jennifer Cahoy.

MILLER-LERMAN, Chief Judge, and SIEVERS and MUES, Judges.

MILLER-LERMAN, Chief Judge.

Appellee Morrill County, Nebraska, filed a paternity action against appellant, Peter Darsaklis, on behalf of Hayden F. Cahoy (Hayden), a minor child born to appellee Jennifer Cahoy (Cahoy). The trial court found that Darsaklis was Hayden's father and ordered, inter alia, that Darsaklis pay child support. In subsequent proceedings, Darsaklis sought a modification to decrease his child support obligation, a request which the trial court denied. Darsaklis appeals. We affirm.

## STATEMENT OF FACTS

Hayden was born on December 15, 1995. Hayden's mother, Cahoy, was not and is not married to Hayden's father, Darsaklis. On April 18, 1996, the Morrill County Attorney filed a petition against Darsaklis, seeking a court order to declare Darsaklis' paternity and establish his monthly obligation to support Hayden. Cahoy was not designated as a party to the filiation proceedings commenced by the county attorney, and she did not initially participate in them.

The record on appeal does not contain a record of early proceedings conducted on the petition filed by the county attorney. However, the record does contain a letter to counsel dated November 4, 1996, in which the trial court announced its finding that Darsaklis was Hayden's father and ordered Darsaklis to pay $324 per month in child support, made retroactively effective to October 1. These findings by the trial court were formalized in an order filed on December 4. Darsaklis filed a motion for new trial, seeking to reduce his child support obligation, but the trial court overruled the motion.

The December 4, 1996, order contained no provision pertaining to Darsaklis' visitation with Hayden. Cahoy subsequently moved to intervene in the filiation case on March 3, 1997, seeking orders to define Darsaklis' visitation rights, as well as additional financial contributions to be paid by Darsaklis for Hayden's health care costs unreimbursed by insurance and the cost of child care while Cahoy was at work.

In Darsaklis' responsive pleading to Cahoy's motion to intervene, he admitted that he had a legal responsibility to financially support Hayden, including the cost of child care and

unreimbursed health care costs. In this responsive pleading, Darsaklis also requested the court to modify his previously ordered child support obligation.

Less than a week after Cahoy sought leave to intervene in the filiation case, on March 7, 1997, the county attorney requested an order finding Darsaklis in contempt of court for failure to pay child support. Despite the trial court's 1996 order determining Darsaklis' monthly support obligation, Darsaklis paid no support whatsoever for Hayden's benefit until the contempt motion was filed. By April 1, Darsaklis' unpaid child support obligation exceeded $2,200. On April 24, Darsaklis was found in willful contempt of court and sentenced to 90 days' incarceration. He avoided serving his sentence by completely paying the support arrearage and depositing $1,000 with the court as security for future delinquent payments. The bond was soon put to use: Darsaklis again failed to pay child support in July 1997. The county attorney requested, and the trial court allowed, payment for Hayden's support to be withdrawn from the bond posted by Darsaklis.

On August 15, 1997, the trial court convened a hearing on Cahoy's motion and petition to intervene in the filiation case, as well as on Darsaklis' motion to modify his child support obligation. At the beginning of the hearing, before evidence was adduced, counsel for Darsaklis advised the court that Darsaklis stipulated to Cahoy's intervention in the action and further stipulated that Darsaklis would pay a share of child-care costs and unreimbursed health care costs for Hayden's benefit. The trial court accepted the stipulation and ordered that Darsaklis' share of these expenses be paid in the same proportion as Darsaklis' proportionate share of the total amount of Hayden's monthly support, determined in accordance with the Nebraska Child Support Guidelines.

The court then heard evidence on the merits of Darsaklis' motion to modify his child support obligation. Darsaklis testified that he owns a 235-acre farm, which formerly belonged to his parents. Darsaklis purchased it through bankruptcy proceedings, and he pays approximately $21,000 annually on the debt for the farm. He testified that he pays for irrigation water and land taxes, which roughly total $12,000 annually; the irrigation

fees include payment for farmland and pastureland owned by his brother. In the bankruptcy proceedings, Darsaklis also obtained farm equipment, for which he makes an annual payment of approximately $8,000 to $9,000.

In 1997, Darsaklis cash-rented his farm to a local farmer for $34,500, and Darsaklis agreed to irrigate the crops on the farm for a 3-month period for an additional payment of $750 per month. He testified that he also earned income totaling $1,150 from cultivating another farmer's land and driving a truck, and he received $280 in flood relief funds. Darsaklis claimed he was unemployed for the period of January through April because "I was trying to get a deal done to lease my farm. . . . I was going to see lawyers every other day, that was a job anyway."

Darsaklis testified that he was receiving medical treatment for injuries sustained as a result of a gunshot wound to his head. He had filed a tort action to recover damages as a result of this shooting, but he had not received any money at the time of trial. Although Darsaklis claimed that he suffered ongoing medical problems because of the gunshot wound, he also testified that he worked at irrigation on a full-time basis, and he admitted that he recently entered his horse in a "[r]ubber check" race, in which "[m]y horse did pretty good."

Darsaklis testified that in a recent flash flood, he lost farm equipment he valued at $12,500. He testified that he also owned other, unspecified farm equipment which was suitable for use, but which he simply stored. He did not use it for his own farming purposes, or rent, lease, or loan it to any other person. At the time of trial, Darsaklis was living in a three-bedroom house located on the farm he owned. The cost of that house was apparently included within the $21,000 he paid annually on the farm debt, and Darsaklis made no other payment on the house. In the affidavit of financial condition he submitted to the trial court for purposes of calculating his child support obligation, Darsaklis referenced his 1994, 1995, and 1996 tax returns, in which he claimed the farm payments as deductions from income. He asserted that these payments should likewise be excluded from consideration as income for purposes of determining his child support obligation. Darsaklis claimed that his house utility pay-

ments, including electricity, gas, and water, should also be excluded from consideration as income.

Exclusive of payment for child care and unreimbursed health care costs, Darsaklis argued that his monthly obligation to support Hayden should be reduced from the previously ordered amount of $324 to $165.31. The trial court disagreed, offering the following observations from the bench:

> A couple things, I cannot wade through all this bankruptcy stuff and refigure this and that. It — you know, you can make these figures into whatever they want to be. Clearly, anybody that can irrigate — and I've done it in the past, it's hard work and you've really undersold yourself on what you're getting paid for that, Mr. Darsaklis. I agree it's probably a full time job but for $750 a month, you can go out and in September make minimum wage at 5.15 an hour, which comes out to $892, and I think clearly Mr. Darsaklis is capable and a competent individual, if anything it underplaces [sic] his abilities to say that he's a minimum wage earner because he's much smarter than that and if he can work irrigating, he's enough of a good hard worker.
>
> Basing one thing here, I think that you take all this bankruptcy buyout thing and all it says to me is he's got the farm thing going on the side and it'll provide him with housing[,] and I figure his housing is worth $600 a month and I figure he can make $892 on minimum wage so I want his income figured at the level of $1,492[.]"

On August 22, 1997, using the child support guidelines, the trial court entered an order finding Darsaklis liable for 62 percent of the total amount of monthly support for Hayden. The trial court ordered that Darsaklis' monthly support obligation continue at $324, and consistent with Darsaklis' stipulation at the commencement of the trial, the trial court also ordered that Darsaklis pay for 62 percent of unreimbursed costs for Hayden's health care and 62 percent of child-care costs.

Darsaklis timely filed a motion for new trial, which was overruled by the trial court on September 10, 1997. Darsaklis appeals.

## ASSIGNMENTS OF ERROR

Darsaklis avers that the trial court erred in failing to find that a material change in circumstances supported reduction of Darsaklis' child support obligation. He claims the trial court erred in assessing him responsible for 62 percent of the costs of child care and unreimbursed health care expenses, and Darsaklis also claims the trial court erred in awarding Cahoy $200 for attorney fees and costs to be paid by Darsaklis.

## STANDARD OF REVIEW

A trial court's award of child support in a paternity case will not be disturbed on appeal in the absence of an abuse of discretion. *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998). On questions of law, an appellate court has an independent obligation to reach the correct conclusion. *Id.*

Modification of child support is an issue entrusted to the discretion of the trial court, and although reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion by the trial court. *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994).

## ANALYSIS

*Modification of Child Support Obligation.*

Child support in a paternity action is to be determined in the same manner as in cases of children born in lawful wedlock. *Sylvis v. Walling*, 248 Neb. 168, 532 N.W.2d 312 (1995). A parent is required to provide his or her child with the basic necessities of life. *State on behalf of Matchett v. Dunkle*, 244 Neb. 639, 508 N.W.2d 580 (1993). Both parents have a duty to support their minor children, and the amount of child support awarded is a function of the status, character, and situation of the parties. The primary consideration in determining the level of child support payments is the best interests of the child. *Dworak v. Fugit*, 1 Neb. App. 332, 495 N.W.2d 47 (1992). It is well established that the Nebraska Child Support Guidelines are presumptively applicable in determining child support in cases of children born out of wedlock. *Sylvis v. Walling, supra.* See *State v. Smith*, 231 Neb. 740, 437 N.W.2d 803 (1989). When a parent seeks modification of child support obligations, it is that

parent's burden to produce proof that a material change of circumstances has occurred which justifies the modification. See *Sabatka v. Sabatka, supra.*

Darsaklis claims the trial court erred in calculating his child support obligation and in failing to find that a change of circumstances had occurred which merited a substantial decrease in Darsaklis' monthly support obligation. Darsaklis avers that the trial court wrongly imputed $600 of monthly income to him derived from his use of the home on his farm in lieu of rent. As noted above, Darsaklis maintained at trial that payment for the cost of his housing and utilities is part of the farm expenses which he deducts from his income on his federal tax returns and that these amounts should not have been considered by the trial court as income. In support of his position, Darsaklis adduced evidence of his federal tax returns for the 3 years immediately preceding trial, all of which showed significant deductions from income and sizable farming losses. Darsaklis reasoned that he was, therefore, entitled to have the costs of his housing deducted from his income for purposes of determining his child support obligation pursuant to the Nebraska Child Support Guidelines. The trial court disagreed, as do we.

Paragraph D of the guidelines provides that the total monthly income used to calculate a parent's child support obligation includes the "income of both parties derived *from all sources*, except all means-tested public assistance benefits and payments received for children of prior marriages." (Emphasis supplied.) "Income," for purposes of the guidelines calculation, is not necessarily limited to figures detailed on a tax or wage payment statement provided by an employer. For example, in *Baratta v. Baratta*, 245 Neb. 103, 511 N.W.2d 104 (1994), the Nebraska Supreme Court found no abuse of discretion in a trial court's calculation of a parent's income, which included the value of housing he received rent free, as well as free use of a car owned by his employer. Similarly, in *Robbins v. Robbins*, 3 Neb. App. 953, 536 N.W.2d 77 (1995), we found that the value of meals provided free of charge to a parent by his employer was properly considered as part of his income.

These cases indicate that "income" may assume a variety of forms. The recent paternity case *State on behalf of Hopkins v.*

*Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998), which was released after trial in the instant case, reinforces these holdings. In *State on behalf of Hopkins*, the minor child's father was employed by a branch of the federal armed services and received housing on a military base and a "subsistence allowance" as tax-exempt benefits incident to his employment. The trial court included the value of those benefits as income in calculating the father's child support obligation, and the father appealed. The Nebraska Supreme Court affirmed the calculations, holding that "the guidelines contemplate that income for purposes of child support may differ from taxable income and do not prevent consideration of tax-exempt benefits in determining the amount of a parent's income 'derived from all sources.' " *Id.* at 865-66, 573 N.W.2d at 435.

Applying *State on behalf of Hopkins*, *Baratta*, and *Robbins* to the instant case, we find no abuse of discretion in the trial court's imputation of $600 in monthly income to Darsaklis to represent the value of his housing, regardless of the manner in which Darsaklis characterizes the value of his housing for purposes of federal tax liability.

We also find that the trial court properly held that Darsaklis failed to meet his burden of proof to prove a material change of circumstances which justified the reduction in child support. Darsaklis testified that he did not consistently work at income-generating employment during the months of January through April 1997, and the record contains no evidence that Darsaklis was seeking employment during that period of time. Further, the record shows that despite the court order for child support entered in early December 1996, Darsaklis paid nothing at all for the support of his child until a contempt order was filed against him in March 1997.

Darsaklis' course of conduct is not unlike the factual pattern set forth in *State v. Smith*, 231 Neb. 740, 437 N.W.2d 803 (1989). In *Smith*, the father of a child born out of wedlock quit his employment as a brand inspector when he learned that the child's mother planned to seek child support payments from him. Smith then worked on his parents' ranch, receiving no remuneration except for room and board and occasional compensation for work as a day laborer on other ranches, and his tax

returns indicated a continuous loss of money. The Nebraska Supreme Court refused to accept Smith's claim that he was without income or earning capacity to pay child support, and the court affirmed a child support order based upon Smith's demonstrated earning capacity as a brand inspector. Following *Smith*, Nebraska courts have consistently examined a parent's earning capacity, as well as actual wages, to determine child support. This is particularly apposite when a parent receives valuable benefits which are not paid as cash, see *State on behalf of Hopkins, supra; Baratta, supra; Robbins, supra*, and also when a parent unjustifiably chooses to be underemployed or unemployed, see, e.g., *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994); *Knippelmier v. Knippelmier*, 238 Neb. 428, 470 N.W.2d 798 (1991); *Morisch v. Morisch*, 218 Neb. 412, 355 N.W.2d 784 (1984); *Dworak v. Fugit*, 1 Neb. App. 332, 495 N.W.2d 47 (1992). See, also, Nebraska Child Support Guidelines, paragraph C(5), which allows deviation from application of the guidelines if application of them would result in an unjust or inappropriate result.

In the instant case, the trial court did not abuse its discretion in finding that Darsaklis failed to meet his burden of proof to show that he had suffered a bona fide reduction in his income. Therefore, we affirm the trial court's judgment regarding child support.

*Payment of Proportionate Share of Child-Care Costs and Unreimbursed Health Care Expenses.*

The trial court ordered that Darsaklis pay 62 percent of the monthly costs of child care while Cahoy was at work, as well as 62 percent of all costs for Hayden's health care which were not reimbursed by insurance. Sixty-two percent of these expenses is consistent with the trial court's finding that, based upon Darsaklis' income, he was responsible for 62 percent of the total monthly cost of support for Hayden.

As noted above, Darsaklis admitted in his responsive pleading that he should be held responsible for paying his proportionate share of the child-care costs and unreimbursed health care expenses. These statements constitute judicial admissions to which the trial court could and did properly consider

Darsaklis held bound. *Whalen v. U S West Communications*, 253 Neb. 334, 570 N.W.2d 531 (1997).

█ The trial court's order is further justified on the basis that Darsaklis stipulated in open court to payment of these expenses. Generally, courts will enforce valid stipulations voluntarily entered into by the parties unless some good cause is shown for declining to do so, especially where the stipulations have been acted upon so that a party relying upon it cannot thereafter be restored to his or her prestipulation status quo. *Mischke v. Mischke*, 253 Neb. 439, 571 N.W.2d 248 (1997).

In the instant case, relying upon the court's acceptance of the stipulation that the court could order a reasonable visitation schedule and further payments by Darsaklis for child care and unreimbursed health care costs, Cahoy presented no evidence to the trial court in support of her petition in intervention. The trial court correctly entered orders regarding Darsaklis' obligation to pay for child care and unreimbursed health care costs, consistent with the stipulation that he would do so.

Paragraph N of the Nebraska Child Support Guidelines expressly provides that child-care costs are a separate item of support for which a child's parent may be held liable, in addition to separately ordered child support. This provision of the guidelines applies to paternity cases, as well as support ordered for children born within a marriage relationship. *Dworak v. Fugit, supra.*

Paragraph O of the guidelines provides that a trial court may apportion all nonreimbursed health care costs for a minor child between the child's parents according to the same formula used to determine each parent's share of child support. Consistent with the rule that children born out of wedlock are as entitled to appropriate parental financial support as children born within a marriage, see *State on behalf of Matchett v. Dunkle*, 244 Neb. 639, 508 N.W.2d 580 (1993), and that the Nebraska Child Support Guidelines are presumptively applicable in determining child support obligations in filiation cases, see *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998), we logically apply paragraph O of the guidelines to filiation cases. The trial court could and did properly order Darsaklis to pay for 62 percent of the unreimbursed costs of

health care for Hayden independent of and in addition to the monthly child support payment, which the trial court calculated based upon evidence of all of the circumstances of the parties. Therefore, we affirm these findings of the trial court.

*Award of Attorney Fees and Costs.*

In Darsaklis' last assignment of error, he contests the trial court's award of $200 to Cahoy for attorney fees and costs she incurred in the trial court.

■ Attorney fees are recoverable in Nebraska only where provided for by law or allowed by custom. *Venter v. Venter*, 249 Neb. 712, 545 N.W.2d 431 (1996), relying on *Murrell v. Murrell*, 232 Neb. 247, 440 N.W.2d 237 (1989). Neb. Rev. Stat. § 43-1406 (Reissue 1993), much of the substance of which is now found at Neb. Rev. Stat. § 43-512.04 (Supp. 1997), as well as Neb. Rev. Stat. § 43-1412 (Reissue 1993 & Supp. 1997), all specifically provide that attorney fees and costs are allowed in paternity and child support cases brought by a child's mother, father, guardian or next friend, the county attorney, or other authorized attorney. We are aware that *State ex rel. Reitz v. Ringer*, 244 Neb. 976, 510 N.W.2d 294 (1994), may be inconsistent with the foregoing statement. Attorney fees are reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial judge. Absent such an abuse, the award will be affirmed. *State ex rel. Mooney v. Duer*, 1 Neb. App. 84, 487 N.W.2d 575 (1992).

We find no evidence in the record of an abuse of discretion by the trial court, and we affirm its award of fees and costs to Cahoy.

AFFIRMED.