IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

SCHMADERER V. SCHMADERER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TODD R. SCHMADERER, APPELLEE,

V.

SHAWN T. SCHMADERER, APPELLANT.

Filed October 24, 2017.    No. A-17-036.

Appeal from the District Court for Sarpy County: WILLIAM B. ZASTERA, Judge. Affirmed as modified.

Bradley D. Holbrook and Elizabeth J. Chrisp, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellant.

Joan Watke Stacy, of Sena, Polk, & Stacy, L.L.O., for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

MOORE, Chief, Judge.

I. INTRODUCTION

Shawn T. Schmaderer and Todd R. Schmaderer were divorced in 2008, and the decree of dissolution was previously modified in 2012. The present appeal arises from modification proceedings initiated by Shawn in 2015. Shawn appeals from the order of the district court for Sarpy County, which modified Todd's child support obligation and certain provisions of the parties' parenting plan. We conclude that the district court abused its discretion in failing to order that the modified child support be applied retroactively, and we modify the order accordingly. We find no other abuse of discretion in the modified order and otherwise affirm.

- 1 -

## II. BACKGROUND

### 1. DISSOLUTION OF MARRIAGE

Todd and Shawn have two minor children: a daughter, born in February 2000, and a son, born in August 2003. Todd lives in Omaha, and Shawn lives in Kearney, having moved there around the time of the dissolution trial.

Pursuant to the 2008 decree of dissolution, the court awarded the parties joint legal custody of the children. The court awarded Shawn physical custody subject to Todd's parenting time as set forth in the parties' parenting plan. The parenting plan essentially provided that Todd was to have parenting time on alternating weekends, but set forth detailed instructions for determining Todd's weekend parenting time schedule. The parenting plan also specified that each parent was to have parenting time "any other reasonable times during the week when the children are with the other parent in Kearney or Omaha with 48 hours advance notice," provided the children attended any regularly scheduled activities, and it specified holiday and summer parenting time. The parties were to exchange physical possession of the children at York, Nebraska.

The court ordered Todd to pay child support of $1,184 per month for two children and $819 per month for one child. The evidence at the divorce trial reflected that Todd, who was a lieutenant with the Omaha Police Department, had a mandatory retirement deduction from his gross income of 14.55%. In calculating Todd's support obligation, the court used a total monthly income of $7,030 and allowed deductions for federal and state taxes ($1,561.07 total) and retirement ($1,022.87, which is 14.55% of $7,030) to arrive at a monthly net income for Todd of $4,446.06.

Shawn appealed, and this court modified the district court's division of property and equalization payments but otherwise affirmed the judgment in a memorandum opinion. See *Schmaderer v. Schmaderer*, 17 Neb. App. xxvi (No. A-08-904, June 16, 2009).

### 2. FIRST MODIFICATION PROCEEDINGS

On July 26, 2012, the district court entered an order modifying the decree after finding a material change in circumstances which justified a change in Todd's child support and the parties' parenting time. The court ordered Todd to pay child support of $1,350 for two children and $980 for one child. The court found that Todd's child support obligation was based on a downward deviation from the Nebraska Child Support Guidelines "in consideration of the transportation expenses incurred on behalf of [Todd] to exercise his parenting time with the parties' minor children," which deviation was in the children's best interests. There is not a child support worksheet attached to the first modification order in the transcript; however, a copy of the worksheet apparently used by the court was received as an exhibit during the second modification trial at issue in the present appeal. The court modified the parenting plan to award Todd additional parenting time on alternating weekends, regardless of the children's school schedules, and set forth detailed instructions for determining the alternating weekend schedule as well as certain additional parenting time for the parties based on specified conditions. Finally, the court modified the parenting time exchange process as follows:

[I]f [Todd] drives to Kearney at the beginning or the end of his alternating weekend parenting time, [Shawn], if she is not working within three (3) hours of the exchange time, shall provide the transportation of the minor children on the other end of [Todd's] weekend parenting time. [Shawn] shall provide her weekend work schedule to [Todd] in writing. For example, if [Todd] drives to Kearney on a Friday for an event for one of the minor children and then drives the children back to Omaha for his weekend of parenting time, rather than meeting [Shawn] for the exchange of the children in York, NE, [Shawn] shall then drive to Omaha on Sunday to pick up the minor children rather than meet [Todd] for the exchange of the children in York, NE on Sunday.

### 3. CURRENT MODIFICATION PROCEEDINGS

On June 15, 2015, Shawn filed a complaint to modify child support and parenting time. Shawn alleged that since the previous modification, Todd's income had increased and he was receiving additional benefits, which should be treated as income for purposes of calculating child support. She also alleged that due to a change in Todd's employment, the then current parenting time schedule was no longer in the children's best interests.

In Todd's answer and counter complaint, he asked the district court to modify the decree and previous modification order by giving him a credit toward his child support obligation for his extended summer parenting time and ordering Shawn to transport the parties' children for Todd's scheduled parenting time. Todd subsequently filed an amended counter complaint for modification, in which he added a request for additional parenting time throughout the year because he had cooperated with the children's schedules to accommodate their sporting and extracurricular activities and their activities with friends.

Todd also filed an application for an order to show cause regarding Shawn's failure to provide him with her weekend work schedule in writing. A hearing was held on November 24, 2015, and evidence at the hearing showed that Shawn had not worked any weekends since April 2014, but that she had not provided that information to Todd. The district court found Shawn in contempt, scheduled a final dispositional hearing for May 3, 2016, and ordered Shawn to provide Todd with her weekend work schedule in writing on a weekly basis each Monday prior to the final dispositional hearing. The final contempt hearing was not actually held in May, and Shawn provided evidence of her compliance with the court's order at the time of the modification trial.

The modification trial was held before the district court on October 25, 2016. The court heard testimony from the parties on the issues of parenting time, transportation, and income, and received documentary evidence, including pay stubs and tax returns. The court also received exhibit 9, which was represented as being the child support calculation used in the previous modification.

Todd testified about changes in his work duties and income since the previous modification. In August 2012, Todd was promoted to Chief of Police with the Omaha Police Department. The district court received Todd's federal income tax returns with attached W-2 forms for 2012 through 2015. Todd's 2015 W-2 shows his salary of $166,482.02 (reflected in box 5

"Medicare wages and tips"). At the time of the 2016 modification hearing, Todd estimated that he was earning $170,000 a year.

Todd has two deductions from his City of Omaha salary that relate to his retirement. The first is a mandatory pension deduction of 16.35% taken out of each check. This deduction is reflected in "Box 14" on Todd's 2015 W-2, which shows an amount of $27,531.10. The second deduction is a voluntary deferred compensation plan. As reflected in box "12a" of his W-2, Todd contributed $36,000 to the deferred compensation plan in 2015. Todd was asked if under that plan he was able "to effectively take a portion of [his] salary, put it into that plan, and not pay any income taxes on it." Todd responded that he was able to take $18,000 per year, "but you can double up a couple years before retirement, and they still take the pension deduction out of that. But I believe it is tax deductible, or . . . pre-tax." Todd testified that in 2016, the mandatory pension deduction of 16.35% was taken out of his $170,000 salary and he was contributing $18,000 to the deferred compensation plan, instead of doubling the amount as he did in 2015. Todd also voluntarily contributes to his retirement at more than 4-percent.

The parties' children, who were ages 16 and 13 at the time of the modification hearing, are active in sports and other activities across the state. There was evidence about the effect of these activities on Todd's parenting time and the parties' transportation to exchange the children. The parties provided conflicting testimony on these issues.

With respect to transportation for parenting time exchanges, Shawn testified that since July 2012, in addition to meeting in York for parenting time exchanges, the parties have both provided round-trip transportation, and Shawn has transported the children to towns closer to Omaha for such exchanges. According to Shawn, the parties have met in York at least 80-percent of the time. She estimated that she had only provided round trip transportation a few times and that she had driven to Omaha less than Todd had driven to Kearney. Shawn testified that she tried to accommodate Todd in terms of where the parties met for exchanges.

Shawn testified about the vehicles driven by Todd for transportation exchanges. According to Shawn, on 54 occasions between July 2012 and March 2016, Todd drove a "city vehicle" or vehicle other than his personal vehicle to transport the children during parenting exchanges. Shawn recalled that a deviation was allowed at the time of the previous modification to help with Todd's "mileage for the driving," but she was uncertain as to the actual amount of the deviation. She felt the deviation was fair at that time, but she asked the court to eliminate the deviation because she did not think it was fair to allow a deviation if Todd was using a city vehicle.

Todd agreed that he has sometimes used a city vehicle to transport the children for parenting time exchanges. According to Todd, he used a city vehicle for such purposes less than 10 times in the previous four years. Todd has also had third parties transport the children or used a third party vehicle to transport the children on 4 or 5 occasions. Todd has not compensated the third parties on those occasions.

Shawn testified about her efforts to accommodate the children's schedules to facilitate Todd's parenting time. According to Shawn, in the prior four years, she has given up her Mother's Day holiday multiple times, changed Christmas holidays, and made scheduling accommodations on other occasions as well, some of which involved Todd's work schedule as opposed to the children's activities. Shawn agreed that she has on occasion refused to accommodate Todd's

parenting time when he missed his scheduled time due to his work because there are only so many available weekends in a year. Shawn estimated that in 2016 Todd missed parenting time with the children on five or six weekends due to his own schedule as opposed to "any other reason." She noted that the children's activity schedule also makes it difficult for her to have a "normal weekend" with them.

Todd testified that in terms of his alternating weekends, he has been extremely flexible in accommodating the children's extracurricular and other activities. For example, if there is a dance on Friday night, Todd arranges to meet on Saturday morning. Todd testified that Shawn used to "accommodate some makeup time" due to the children's activities, but after about 2014, Shawn was no longer willing to do so and Todd would "just miss the time." Todd noted that the only time he was able to see the children during the month of December 2015 was during his designated Christmas break time because Shawn denied his requests for weekend parenting time. Todd noted that he had asked for time during the week of winter break in which the Nebraska Schools Activities Association (NSAA) has a "mandatory sports moratorium" and that Shawn did not oblige this request. Todd agreed that there have been times when he did not have his scheduled parenting time due to his own work schedule.

Todd submitted a proposed child support calculation based on his and Shawn's 2015 incomes. Todd did not include any "FICA" deductions in his calculation, testifying that instead of FICA withholding, he has 16.35-percent withheld for his mandatory pension. Todd's calculation also included a deduction of $554.94 for his separate voluntary retirement contribution "as a 4 percent maximum" and for the amount of his own health insurance premium. Todd's calculation of his support obligation was $1,707.58, and after credit for the health insurance premium paid for the children of $112.93, his final share of child support was $1,595. Todd asked the court to allow a $200 deviation from his child support obligation for the travel he does to continue his relationship with his children. He submitted documentation of his trips to "Kearney, et cetera" that were "outside of [the parties'] regular meeting time" and copies of schedules and notes concerning the children's sports and activities.

Todd asked that the court award him additional parenting time at the beginning and ending of summer break, periods in which the children were not playing sports, that his Christmas break parenting time be scheduled during the sports moratorium week, and that he be allowed to designate his alternating weekend schedule to maximize his time with the children. Additionally, Todd asked that Shawn be ordered to provide transportation for Todd's weekend parenting time and that the parties continue to meet in York for summer and holiday parenting time exchanges.

On November 16, 2016, the district court entered a modification order. The court used Todd's current salary of $170,000 per year in determining whether there was a material change in circumstances warranting a change in child support. In the attached child support worksheet, the court used a total monthly income for Todd of $14,166.67 ($170,000 divided by 12) and allowed deductions for federal taxes ($3,050.40), state taxes ($839.45), FICA - Social Security ($612.25), FICA - Medicare ($205.42), retirement ($554.94, which is 4% of $13,873.50 - Todd's 2015 income annualized), health insurance premium for parent ($52.02), and "Other Deductions" ($2,316.25, which is 16.35% of $14,166.67), plus a child tax credit of $83.33, to arrive at a net monthly income for Todd of $6,619.28. The court calculated Todd's obligation at $1,478 for two

children and $1,043 for one child, but in comparing this calculation to the calculation from the previous modification (exhibit 9), the court found that there was not a 10% deviation from the prior order. Accordingly, the court did not modify Todd's child support obligation. The court found that Todd's previously ordered support obligation had included a $200 downward departure from the child support guidelines for travel by Todd to attend the children's events in Kearney. In considering the issue of the deviation for travel expenses, the court found it clear that Todd was taking an active role in the children's lives and allowed the deviation to remain in effect.

The district court also found a material change in circumstances upon its review of the parenting plan, "which if not addressed will produce continuing litigation between the parties in the form of contempt." The court modified the parenting plan as follows:

1. The current plan shall remain in effect with [Todd] to receive every other weekend, until the children are released from school in 2017 and each year thereafter, at which time [Todd] shall receive the first week and last week of the summer break.

2. In the year 2016 and thereafter, [Todd] shall receive one week of parenting time during the Christmas holiday break. The same to[o] with the NSAA dead week.

3. Commencing August[] 2017, [Todd] shall receive two weekends per month parenting time for each year thereafter, to be selected by him furnishing to [Shawn] on or before July 15th of each year, a calendar of his selected weekends. If the month contains five weekends, [Todd] shall have three weekends for that month.

4. Holiday parenting time not [a]ffected by this Order, as set out in the current Parenting Plan, shall remain the same.

5. Parenting time shall commence at 6:00 p.m. on Friday and end at 6:00 p.m. on Sunday.

6. If [Todd] allows the children to participate in activities during his parenting time, and does not travel to Kearney on Friday, parenting time shall commence at 10:00 a.m. on Saturday in York, NE.

With respect to transportation, the court stated:

For purposes of parenting time, the parties shall meet in York, NE for the exchange of the children.

If [Todd] chooses to allow the children to participate in activities in Kearney during his parenting time and goes to Kearney, he may pick up the children after such activities, but shall be responsible for all transportation from Kearney to Omaha, and back to York, NE on Sunday.

4. MOTION FOR NEW TRIAL

On November 17, 2016, Shawn filed a motion for new trial. She asserted that the district court had included the entirety of Todd's income with his employment as taxable "despite the fact that [Todd] contributes $18,000.00 to a deferred compensation account which is not taxable, but which is included for child support purposes." She also asserted that the court included Todd's 16.35% contribution to his pension "which although is excludable as income for calculating child

support purposes is also excludable in calculating [Todd's] Federal and State income taxes." Shawn asked the court to find a material change in circumstances as it related to Todd's income, attached proposed child support calculations, and asked that Todd's child support be increased and retroactively dated back to the first day of the month following Shawn's motion to modify. Shawn also alleged that Todd failed to prove a material change in circumstances justifying the changes in parenting time, and she stated that the court's November 2016 order was contradictory in that it awarded Todd parenting time for one week during the Christmas holiday break to coincide with the NSAA dead week, but did not modify any holiday parenting times. Shawn stated that because the NSAA dead week typically occurred over the Christmas holiday, the court's order effectively gave Todd the Christmas holiday every year.

The district court treated Shawn's motion as a motion to alter or amend and entered an amended modification order on December 16, 2016. The court recalculated Todd's child support obligation. On its child support worksheet, the court used $14,166 ($170,000 divided by 12 and rounded down) as Todd's total monthly income. The worksheet set forth deductions for federal taxes ($3,050.21), state taxes ($839.41), and retirement ($2,337.39) to arrive at a net monthly income for Todd of $7,939. The worksheet omitted deductions for FICA (both Social Security and Medicare) and for Todd's own health insurance premium. The worksheet also omitted a credit for the health insurance premium paid by Todd for the children. The worksheet set Todd's monthly share at $1,753. The court again allowed the $200 downward deviation for transportation costs and set Todd's modified obligation at $1,553 for two children and $1,061 for one child, commencing January 1, 2017. Concerning its previous parenting time modification, the court stated, "After further review, the portion of the order awarding [Todd] the dead week during the Christmas recess is amended to allow [Todd] the dead week only each year and no other part of the Christmas holiday."

## III. ASSIGNMENTS OF ERROR

Shawn asserts, reworded, that the district court erred in (1) calculating Todd's taxable income for child support purposes, (2) crediting Todd with speculative travel expenses not directly related to his parenting time, (3) failing to order Todd to pay retroactive child support commencing on the first day of the month following her application to modify, and (4) modifying the parenting plan.

## IV. STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017). Despite de novo review, when credible evidence is in conflict on material issues of fact, the appellate court will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Mock v. Neumeister*, 296 Neb. 376, 892 N.W.2d 569 (2017).

## V. ANALYSIS

### 1. TODD'S INCOME

Shawn asserts that the district court erred in calculating Todd's taxable income for child support purposes. Shawn argues that the district court incorrectly calculated Todd's income by including the mandatory pension and deferred compensation amounts in his total monthly income. She argues that because child support is a function of a party's net income, the court's calculation gave Todd annual credits for $36,602 in federal taxes and $10,072.92 in state taxes (annualized amounts of the federal and state tax deductions used in worksheet attached to court's December 2016 amended order), when Todd actually paid $13,483 in federal taxes and $4,879 in state taxes (as reflected in Todd's 2015 individual income tax return). She argues that this calculation results in a child support obligation that is unjust and inappropriate because it does not adequately take into account Todd's earnings.

Shawn argues that the district court should have calculated Todd's income as depicted in the first worksheet attached to her motion for new trial. In that calculation, Shawn shows Todd's total monthly income from all sources as $11,850.42 ($170,000 salary less annual 16.35% mandatory pension amount of $27,795, divided by 12 months). She then shows his nontaxable income as $1,500 ($18,000 annual deferred compensation contribution, divided by 12 months). Shawn argues, "Using those numbers, Todd's federal and state taxes would be $2,041.85 and $682.06 per month, respectively, or $28,882.20 and $8,814.72 per year, respectively." Brief for appellant at 18. Shawn argues that those amounts, while exceeding what Todd actually paid in federal and state taxes in 2015, "would better capture Todd's actual net income" and "would avoid awarding Todd a double tax credit at the expense of the children." Brief for appellant at 18.

#### (a) Total Monthly Income

The Nebraska Child Support Guidelines define total monthly income as "income of both parties derived from all sources." See Neb. Ct. R. § 4-204. This definition does not refer to taxable income as the starting point for determining total monthly income as suggested by Shawn. The worksheets included with the guidelines begin with "total monthly income", not taxable income. Income for the purpose of child support is not necessarily synonymous with taxable income. *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004). See, also, *Morrill County v. Darsaklis*, 7 Neb. App. 489, 584 N.W.2d 36 (1998) (guidelines contemplate that income for purposes of child support may differ from taxable income and do not prevent consideration of tax-exempt benefits in determining amount of parent's income derived from all sources).

We find no abuse of discretion by the district court in utilizing Todd's 2016 salary of $170,000 in determining his total monthly income as opposed to an amount reduced by his mandatory retirement contribution as suggested by Shawn. We further reject Shawn's suggestion that Todd's contribution of $1,500 per month ($18,000 annual contribution) to his deferred compensation plan be added to his total monthly income. The record shows that this contribution is deducted from his monthly income.

The guidelines allow certain annualized deductions in arriving at a party's net income for child support purposes. See Neb. Ct. R. § 4-205. Shawn argues that the district court erred in calculating the deductions for taxes.

The guidelines provide that "[s]tandard deductions applicable to the number of exemptions provided by law will be used to establish the amount of federal and state income taxes." § 4-205(A). Shawn argues that Todd's 2015 tax returns show that he paid far less in taxes than allowed by the court in its worksheet. As set forth above, Shawn suggests that the standard deductions be applied after reducing Todd's income by the amount of his mandatory retirement contribution. We have already rejected Shawn's suggestion that Todd's total monthly income be reduced by the amount of his mandatory retirement. We further find no abuse of discretion by the district court in its calculation of the tax deductions on the child support worksheet, which deductions appear to be in compliance with the guidelines.

For the sake of completeness, we note that the court did not allow deductions for FICA, either Social Security or Medicare, in its amended worksheet attached to its December 2016 order. While the guidelines recognize that deductions for mandatory retirement contributions can be in lieu of Social Security deductions, the guidelines do not eliminate the deduction for Medicare. See § 4-205(B). The court's November 2016 modification order allowed a deduction for "FICA - Medicare" of $205.42, but the December order eliminated this deduction. In addition, the court's amended worksheet does not include the deduction for Todd's health insurance premium in the sum of $52.02, or the health insurance premium credit of $112.93, as contained in its November order. However, Todd has not filed a cross-appeal to argue that omission of these deductions and credit was in error and we will not address them further as such deductions/credit would not substantially alter the end result. Finally, we note that the district court properly eliminated the deduction for Todd's voluntary retirement contribution due to the existence of his mandatory retirement plan, and included a deduction for the mandatory retirement contribution only. See § 4-205(C).

The Nebraska Supreme Court has recognized that if, under the circumstances of a particular case, the deduction of individual contributions required by a retirement plan results in a child support obligation which is unjust or inappropriate, the trial court has discretionary authority to deviate from the Nebraska Child Support Guidelines in determining a parent's obligation. *Workman v. Workman*, 262 Neb. 373, 632 N.W.2d 286 (2001). Based upon our de novo review, we cannot say that the deduction for Todd's mandatory retirement plan results in a child support obligation that is unjust or inappropriate. We find no abuse of discretion in the district court's calculation of Todd's income, or in the deductions allowed therefrom.

### 2. DEVIATION FOR TRAVEL EXPENSES

Shawn asserts that the district court erred in crediting Todd with speculative travel expenses not directly related to his parenting time.

The Nebraska Child Support Guidelines are to be applied as a rebuttable presumption to both temporary and permanent support, and any deviation from the guidelines must take into consideration the best interests of the children. *Wilkins v. Wilkins*, 269 Neb. 937, 697 N.W.2d 280

(2005). In Neb. Ct. R. § 4-210 (Rev. 2008), the guidelines provide that "[a]ny documented substantial and reasonable long-distance transportation costs directly associated with visitation or parenting time may be considered by the court and, if appropriate, allowed as a deviation from the guidelines." "Only reasonable transportation expenses may reduce or abate a child support obligation." *Pearson v. Pearson*, 285 Neb. 686, 692, 828 N.W.2d 760, 764 (2013). The matter of travel expenses associated with parenting time is initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. See *State on behalf of Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004). There is no immutable standard for the allocation of travel expenses associated with parenting time, and instead the determination of reasonableness is made on a case-by-case basis. See *Id.*

Shawn argues that Todd failed to provide documentation showing substantial and reasonable long-distance transportation costs directly related to his parenting time as required by the guidelines. She points to conflicting evidence presented by the parties on the issue of transportation. We consider and give weight to the fact that the district court observed the witnesses and accepted one version of the facts over another. See *Mock v. Neumeister*, 296 Neb. 376, 892 N.W.2d 569 (2017). In its November 2016 modification order, the court noted the previous $200 deviation allowed for travel by Todd to attend events of the children in Kearney. The court found that Todd was taking an active role in his children's lives and allowed the prior deviation to remain in effect. The court did not alter this deviation in its amended modification order.

While Todd did not provide documentation of actual transportation costs related to exercising his parenting time, he did provide at least some documentation of his travel to spend time with the children and of the children's active schedules. And, the district court clearly credited Todd's version of events with respect to travel-related parenting time exchange issues. Upon our de novo review, we find no abuse of discretion in the court's continuation of the $200 deviation for Todd's parenting time travel expenses.

### 3. RETROACTIVE CHILD SUPPORT

Shawn asserts that the district court erred in failing to order Todd to pay retroactive child support commencing on the first day of the month following her application to modify (i.e., commencing July 1, 2015). In its December 2016 amended order, the court modified Todd's support obligation to $1,553 per month for two children and $1,061 for one child, commencing January 1, 2017. The court did not specify why it had declined to order retroactive child support.

Whether a child support order should be retroactive is entrusted to the discretion of the trial court, and an appellate court will affirm its decision absent an abuse of discretion. *Johnson v. Johnson*, 290 Neb. 838, 862 N.W.2d 740 (2015). In determining whether to order a retroactive modification of child support, a court must consider the parties' status, character, situation, and attendant circumstances. *Id.* Absent equities to the contrary, modification of a child support order should be applied retroactively to the first day of the month following the filing date of the application for modification. *Id.* In modification of child support proceedings, the children and the custodial parent should not be penalized by delay in the legal process, nor should the noncustodial parent gratuitously benefit from such delay. *Id.*

In this case, Shawn's modification complaint was filed in June 2015. In October 2015, Todd instituted a contempt action in the midst of the modification proceedings. Trial in the modification proceeding was scheduled for May 2016 but was not held until November after Shawn dismissed a portion of her complaint and Todd filed an amended complaint. In addition, the case was transferred to a different district judge prior to trial. Following Shawn's motion for new trial, the court entered its amended order in December 2016, ordering that Todd's modified child support obligation commence in January 2017.

Todd argues that Shawn did not request any retroactive increase in Todd's child support at the time of trial or in her motion for new trial. However, in Shawn's complaint she requested "an award of child support calculated pursuant to the Nebraska Child Support Guidelines" and asked the court to "for such other and further relief as this Court deems equitable and just." Shawn's complaint was sufficient to raise a request for retroactive support. See *Henke v. Guerrero*, 13 Neb. App. 337, 692 N.W.2d 762 (2005) (prayer for general equitable relief is to be construed liberally, and will often justify granting relief in addition to that contained in specific prayer, provided it fairly conforms to case made by petition and evidence). In addition, Shawn raised the issue of retroactivity in her motion for new trial.

Todd also argues that he did nothing to delay the proceedings. In our review, although there were delays in the proceedings, it does not appear to be solely the fault of one or the other party. And, this court has applied the principle (as set forth above in *Johnson v. Johnson, supra*) that a noncustodial parent should not gratuitously benefit from delays in the legal system when he or she "should, and is able to, pay an increased amount of child support." See *McDonald v. McDonald*, 21 Neb. App. 535, 548, 840 N.W.2d 573, 586 (2013) (finding no error in award of retroactive support where, despite increased salary, obligor parent did not explain why it would be inequitable for him to pay retroactive support nor why paying lump sum would be hardship). Here, Todd does not argue that he would be unable to pay the amount of retroactive support or that it would be inequitable to order him to do so.

We conclude that because there was no evidence of equities to the contrary, the district court abused its discretion in not ordering retroactive support to July 1, 2015. The difference in the child support obligation is $203 per month and the retroactive period is 18 months, resulting in retroactive child support due of $3,654. We modify the district court's order to provide that Shawn is entitled to retroactive support from July 1, 2015 and Todd is ordered to pay the amount of $3,654 within 60 days of the issuance of the mandate in the district court.

4. MODIFICATION OF PARENTING TIME

Shawn asserts that the district court erred in modifying the parenting plan. She does not challenge any particular provision of the parenting plan as modified by the court, but she argues that neither the parties' difficulties in communication concerning the children, their activities, and the weekend exchanges nor Todd's change in work schedule were unanticipated changes since entry of the previous modification sufficient to constitute a material change in circumstances.

The best interests of the children are the primary and paramount considerations in determining and modifying parenting time. *State on behalf of Natalya B. & Nikiah A. v. Bishop A.*, 24 Neb. App. 477, 891 N.W.2d 685 (2017). The right of parenting time is subject to continuous

review by the court, and a party may seek modification of parenting time on the grounds that there has been a material change in circumstances. *Id.*

The evidence shows that the children have extremely active schedules which have affected Todd's ability to exercise and even schedule his parenting time. The evidence also shows that since the previous modification, although initially willing to accommodate Todd's requests with respect to his parenting time, Shawn has become increasingly less flexible in her willingness to do so. The parties presented conflicting evidence on these issues, and we give weight to the fact that the district court clearly resolved these issues in Todd's favor. See *Mock v. Neumeister*, 296 Neb. 376, 892 N.W.2d 569 (2017). While some of these issues may have been contemplated at the time of the previous modification, we find the evidence sufficient to show a material change of circumstances warranting a modification of the parties' parenting plan, which modification is in the best interest of the children. The court did not abuse its discretion in doing so.

## VI. CONCLUSION

The court did not abuse its discretion in determining Todd's income for child support purposes, in continuing the $200 deviation for Todd's parenting time travel expenses, or in modifying the parenting plan. However, the court abused its discretion in not ordering child support retroactive to July 1, 2015, and we modify the court's order in that regard as set forth above.

AFFIRMED AS MODIFIED.